We have two cases scheduled for argument today. One case has been submitted on the briefs. The two cases for argument, we'll start with the first one, which is N. Ray Louis Vuitton, 18-1651. Counselor Gann, you may proceed. You're reserving five minutes of your time for rebuttal, is that correct? That is correct. Okay. Thank you, Your Honor. Thank you, Your Honors. Good morning. I am Rebecca Gann for the appellate Louis Vuitton, and I have addressed in the briefs two issues that we think are before the court today, but because of the limited time, we will focus on the central one, which is whether or not substantial evidence underpins the board's decision that consumer confusion is likely, and not surprisingly, we submit that there is not substantial evidence that these marks will engender consumer confusion. Why? Because these marks are very, very different. Our client's mark, appogee, is a French term. Under this court's case law in Palm Bay import, the average consumer would stop and translate this mark into height or peak. I was just going to ask you about, what is a store within a store? I'm just jumping into the channels of trade, and I'm wondering, I don't see that term necessarily defined. I'm wondering if there's anything in the record about what it means, and also whether you have any photographs, for example, of an example of a store within a store. So we have cited in our briefs to a few cases, board cases, that discuss what a store within a store is. And in this record that's before you, there is some evidence about the store within a store partnership that Louis Vuitton had, which were two of them. So what is a store within a store? A store within a store for Louis Vuitton means it's essentially creating a box within a store with walls that are branded with Louis Vuitton. There is a picture of a display of how the perfumes are marketed within the store, because this particular perfume is part of a seven-set collection. They're sold as a set, and they're also marketed as a set. We have an image of the display case where all the perfumes are. Could you tell me where that is in the record? Absolutely. I think it's highly relevant to the channels of trade, and whether there's substantial evidence to court the board's finding on that, and that's why I'm trying to understand what it is. Sure. So at appendix 579, which is page 8 of my brief on the merits, there is an image of the display case for the perfumes. Is it 579? 579, which is page 8 on the initial brief on the merits. So this is a wall within the store within a store. As is described in the record, our client had two of these pop-up store within a store. One was at a high-end shopping mall in Orange County, California, and another was at the dearly departed Henri Vendel in New York. This is a restriction, right? It is a restriction. That's right. It's a restriction on the channel of trade. It is. But the registrant doesn't have a similar restriction. The registrant does not have a similar restriction in this particular registration. In the other registration, they did have a restriction for professional use only. Okay. On the one we're looking at, there's no similar restriction on that product being sold only in stores within stores. It could be sold that way. There is evidence in the record that they're cheap but specialty conditioner, which is targeted at a specific hair segment. It's our job to look at the registration and not just think about... Because the registration doesn't limit the channels of trade, right? We have to legally, and what the board had to do legally was think of that registration as covering all channels of trade. That might not necessarily mean that it would be sold in a Louis Vuitton store within a store, but that it could be sold in the same store perhaps as the store in which the Louis Vuitton store within a store is located. That's where I'm trying to understand what the store within a store is. You referred to page A580.  Is that what one would see? A580. I just recently referred to 579 appendix. Correct. We did put in images of... Can you get your appendix and look at 580 so we can talk about it? Because 579 is kind of acontextual. It looks like it's just a display, not an actual store. Sure. Thank you. So yes, this is an example of the pop-up store in Costa Mesa, California. So this is just an image of the Louis Vuitton pop-up, but how does it relate to the... What is this in? What kind of store within a store is this in? So this is within a shopping mall in California. But it's not a separate Louis Vuitton store, right? No, because... So what kind of store is it in? Okay. So in this particular example, the store is a shopping plaza. It's within a plaza. I believe they set it up in sort of in common space. They created a store like in the center of the mall that was walled off. So it's not within a department store, for example. This specific example is within a shopping mall. The other example was within Henri Bendel, and it was a walled-off space. What do you mean by a walled-off space? I mean that they took a section of Henri Bendel, and they set up walls, and the walls were And this particular display at 579 was one of the walls, and they had... You can see in the image at 580 that... What products are sold within those walls? This particular pop-up is just for fragrance. So when I said that they created a store within a store partnerships, it was just for fragrance. It's to highlight this seven-cent collection, because they hadn't produced perfume in 70 years, and it was a coveted specialty product. So was this within a large department store? This was within a large shopping mall, this particular image at 580. So it's like any other... It's just renting space like any other store in the mall? No, this isn't renting space like any other store in the mall. Why do you call this a store within a store? I thought that would be something different. Now you're saying this is a store that 580 and 579, this is a store in a shopping mall. I'm not saying that it's a store in a shopping mall. I'm saying in this particular... They had two partnerships at the time of filing. One of them was with a very expensive, very small shopping plaza in California, and they created a pop-up store in the center of the mall. They didn't rent a space off to the side. That's just a store, right? Well, it's a pop-up store because it's a thermal. It's in a large case. You're getting caught up in things that don't matter. It's just a store like any other separate store in a mall. In this case, the board said there could be an overlap in channels of trade, at least in the store within a store. So I'm trying to understand, we're trying to understand what store within a store is. So can you help us understand that? Referring to evidence in the record, it would help us understand what that is. Sure. I mean, I think that, for example, some of the cases that I cited to... Do you have any evidence on what Louis Vuitton store within a store? Well, I think Appendix 580 is one image of the store within a store. But you said that's not a store within a store, when it's just a separate store in a mall. I don't think... Also, I'm not sure why you're pushing back so hard. That seems to help your argument that it's not in the same channel of trade because it's a separate store. Okay. Well, then I accept your argument. Yeah, but that's not good. I mean, it only helps you so far in that we still have to... The board relied on the fact that you admitted that this was sold in a store within a store, and we can't figure out what you're talking about. Let me put my cards on the table. Okay. When I read this and heard about store within a store, I thought about high-end shopping... High-end stores, not that I go to them very often, but maybe to buy presents for people. Like Nordstrom's and Henri Vidal is way out of my price range. But places like that, where you have separate counters for high-end perfume and cosmetics, and those are separately branded, and they're separately manned by people that may even wear uniforms corresponding not to Nordstrom's, but to whatever high-end perfume or body lotion you want. And those are what I thought that everybody meant when they were talking about stores within a store, and why the board said, because that's part of a department store, even if it's separately branded and separately sold within another department store where the conditioner might be sold, it was the same channel to trade. Isn't that what the board was talking about? Well, I think the board has different case law about store within a store. We're not talking about case law here. This is a factual question about the method of sale of your product and their product. It's not about case law. It's about facts. What are the facts here? It's clear to me that your friend on the other side is arguing that their conditioner can be sold in department stores alongside yours, even if it's sold at a separate counter store within a store. And to me, that's the actual conclusion the board made. What's your evidence to suggest that that doesn't have substantial evidence? Well, I would point to your case in RICO, which says the fact that goods are sold in the same department store is not ipso facto evidence of relatedness of goods. The government would collapse. Let me try one more time. We are not talking about case law, and we are not talking about legal principles. The board made a factual finding here that your products and their products are sold within the same channels because they can both be sold in a department store. We're not addressing that as a legal error, because that can be correct. We're addressing that as a factual error. What factual evidence can you point to in the record that detracts from the board's factual finding? I think that there's evidence in the record that this is something different than a separate makeup counter. It's what we're asking for is appendix pages to show us where this evidence is. I think you've made a good start with page 579 and 580, but what else do you have to show us what a store within a store is and why there wouldn't be similar channels of trade just because the two different products are sold in the same store, one being within Louis Vuitton's store within a store? So I mean, I think that we did submit evidence, those images, that they have store within a store partnerships. It's a thorny issue, and there are cases for that. Besides pages 8, 579, and 580. Of what a store within a store is? So if we are going by the idea that we have to look at the recitation of services or the identifications of goods, could a department store be encompassed within the registrant's unlimited registration? It could. Is that the test? Because then we're essentially collapsing all consumer goods. Anything that can be applied to the body is ipso facto related because you might have a beauty supply store that could sell conditioner and could sell perfume. No, facts matter. Consumers are not lemmings. The government's approach is essentially saying consumers don't take in external information. I said I was going to give one last try, but I'm going to make it one last try. Can you give me an answer that points to something in the record other than 579 or 580 that demonstrates what Louis Vuitton's store within a store looks like and how it's different from the example I gave you of high-end perfume or cosmetic counters at regular department stores like Nordstrom's? No, but if we took your example, sir... Wait, wait, wait. Can I start? So your answer is no, you don't have anything else to point to in the record? Those are the images that you pointed to are the images of the store within the store. You're well into your rebuttal time. You've got a minute left. Do you want to save the rest of your time? Yes, I'll save it. Thank you, sir. Attorney Walker. Does this matter, this discussion of what the stores look like and everything? Isn't it that it's irrelevant because this is an ex parte proceeding to begin with? Good morning. May it please the court. I don't know that I would say it's irrelevant. It may be irrelevant specifically what Louis Vuitton does, except to the extent that that would show generally what a store within a store concept is. But the relevant inquiry is a more general assessment of the trade channels with respect to both the registration and the application at issue. And so it is relevant to consider what the limitations are in the application. And what the board did here was take the words in Louis Vuitton's application as evidence of what their trade channels restrictions were and said that a store within a store concept can include sales within department stores. And if there was a difference, if there was a different consideration that the board should have taken, then it was incumbent upon the appellant to put in evidence that shows what a store within a store concept is more generally. Can I ask you, so as I understand it, do you agree that what the board said was, with respect to the limitations listed by Louis Vuitton's registration, it was the store within the store was the only one where they thought that there was a similar channel of trade. Is that correct? That is, they acknowledge that there's a distinction in the channels of trade with respect to the particular Louis Vuitton stores and the Louis Vuitton website. And so they didn't find that those were overlapping trade channels. And then they said... So the only one that's the overlapping trade channel as found by the board is the store within a store. Is that correct? That's correct, Your Honor. One thing I didn't see in the board's opinion was a discussion of why there would be confusion, or why there, I guess it would be confusion, where there would be confusion even if Louis Vuitton's store within a store was located in the same department store as where the Apogee conditioner was sold or hair product was sold. Did you see that discussed in the board's opinion? I'm not sure that I understand the question, so let me just frame it so that I make sure that I understand it. So a particular discussion about the registrants and the applicants' goods being sold together in the store, or... Well, I thought that was the whole point. And I guess what I'm saying is, where do you think the board addressed whether there would be confusion or similar trade channels when you're talking about Louis Vuitton's store within a store limitation? Because I don't see it addressed in the board's opinion. Yes, Your Honor. Let me just find the board decision. So the board discusses beginning at the bottom of APPX 11 through APPX 12, the overlap and the trade channels with respect to the store within a store. And they first talk about the both traditional brick and mortar and online department stores as relevant channels of trade for the registrant. And then they go on to say that a store within a store partnership could include those both brick and mortar and online department stores. And I do want to be clear on that point that because the appellant's application is not restricted as to brick and mortar stores, that the store within a store concept could also include online sales as well. Oh, even though the registration says Louis Vuitton's website and only says store within a store partnerships, do you think that includes online? It would necessarily include that because that's not restricted. And so retail store services, just as a general matter... Did the board find that? That was the discussion. And so they identify that they could be sold, for example, at both Macy's and Macy's.com. And that is generally how goods IDs are read. And so if you have, or services are read. So if you have retail stores... You're looking at page 812 at the top? I am, yes, Your Honor. With respect to the other factors, all of the board's factors were supported by substantial evidence. And the board's properly weighed the factors here. We would ask that this court affirm the board's findings. And if there are no further questions, I think that... I have a question, actually. On the top of page 12, I thought that was talking about the registrant's channel restrictions. I didn't think it was talking about Louis Vuitton's channel restrictions. Louis Vuitton isn't the registrant, right? That's correct. But then halfway down the page, the board does it in a slightly reverse because it has to include all of the channels of trade for the registrant. So they conclude that there would be... We cannot conclude that there would be no overlapping channels of trade between applicants and registrants' goods. And then they're citing cases that support the notion that they would be... I'm going to interrupt you for a minute where it says, we agree with Louis Vuitton that Louis Vuitton's stores and website are specialized trade channels that do not overlap with the ordinary channels of trade for registrants' products. However, we find otherwise with regard to Louis Vuitton's store-within-a-store partnerships with high-end retail stores within Louis Vuitton's exclusive distributor network. We are here. Do they talk about that, including websites? They... I understood that the entire discussion was referring to... The earlier discussion was referring to high-end retail stores and they gave examples of both brick and mortar and online department. But that was in discussion in connection with the registrants' channels of trade, right? Because that discussion you're talking about on the top of page 812 is preceded by a sentence that is talking about the registrants' channels of trade. Is that correct? That's correct, Your Honor, and I apologize. As I mentioned, traditionally, we would read... Without a specific restriction to brick and mortar, we would read that as encompassing online. I understand what you're saying to me. I don't see the board doing that. Right. It seems like even if that's the case, the board then went on and said, but for online stuff, we agree with Louis Vuitton that there's no overlap here. With particular respect to the Louis Vuitton online store, so like Louis Vuitton's website... Oh, what you're talking about is that Louis Vuitton's specifically branded websites don't overlap with their websites or things. If they sell goods in high-end retail stores through an online portal, like Nordstrom's or Henri Vendel or something like that, that that's what overlaps with the online high-end retail outlet. That was the point that I was making, Your Honor, but I want to be clear... It's not particularly clear that that's what you're talking about. Excuse me. I want to be clear that even with respect to brick and mortar, to the extent that there may not be complete clarity with respect to online, it would also be true for brick and mortar, and that is expressly discussed in the board's decision. And in the middle of the page at A-12, this sentence, the sentence where I think they really addressed that is the one in the middle of page A-12 that says, given that high-end retail stores often sell the types of goods at issue, we consider this a trade channel appropriate for the goods and therefore one in which we presume registrants' goods would travel. That, I think, is the heart and soul of the board's analysis, finding that there's overlap in channels of trade. But the problem I'm having with it is it doesn't really get into the intricacies of what is a store within a store and why is it that somebody at Nordstrom's or what have you would see, you know, one product in one location and one product within Louis Vuitton's store within a store and think that they are, there's, and there's confusion. I don't, I'm having, I don't see the board grappling with that issue and I'm wondering why that is. So the board was, in this discussion, they're assessing one factor, right? The overlapping trade channels. And what they found was that the trade channels overlap because the stores are of the type that the products can be sold in. In addition, we have evidence in the record, and this also goes to the relatedness of the goods, that these are the types of goods that are traditionally sold under the same mark by the same entity. So let me interrupt you for a minute just to make sure I understand what you're saying. I think you're saying that it's enough that Louis Vuitton's store within a store is in Nordstrom and so is the conditioner. No other conditions, no other considerations have to be made. That is okay and that's sufficient for there to be same channels of trade. Is that right? I don't know that I would go so far as to say that, and I would be careful not to say that because I think this court has been clear that it is not always the case that sales within the same store is sufficient. And the recod is an example of that where in a grocery store you may have a wide variety of different items and it's not just because they're sold on the same store, but we have additional evidence here. Where is the board addressing that? Where is the board dealing with that difficult question then of this isn't a per se application and I need to weigh and think about whether when I'm talking about one product in the store and another product in a store within a store, I'm going to know that it's the same channel of trade. How am I, where do they deal with that? The board had addressed related, and there's some overlap in these factors, and there's overlap in these factors in the case law as well. And so the board had previously addressed on pages APBX 8 and APBX 9, particular the types of evidence here that related to relatedness. And so you have both evidence of relatedness of the goods being sold by others, the types of good being sold by others, you know, both characters. How does relatedness of the goods tell me whether there's substantial evidence to support the finding on channels of trade? That's the type of evidence that that Ricott said would be relevant when either goods that are used together or that are sold under the same mark that would support the trade channel, the additional trade channel finding. And because there otherwise you may end up in a situation where you have a per se rule. To avoid a per se rule that sold in the same store is sufficient. And the addition, we have the additional factors here. Ricott, as I recall, that's the Frito-Lay case. That's right. And they talk about, you know, milk being sold in one part of the store and other goods being sold in other parts of the store. And the goods there were human food versus dog food, right? So that was the discussion in that case. And the other factor we have here is that they wouldn't just be sold in the same stores. They'd be sold in the same parts of stores, right? That we have evidence in the record that shows sort of beauty parts of the internet websites. And that these are the types that would be sold, not just in the same, you know, sort of third floor versus first floor, but at least sort of in the same general area. We addressed a similar issue in the case, in Ray Detroit Athletic Company. Are you familiar with that case? I am, your honor. And there we said, indeed, the owner of an unrestricted registration, and that's what we have here, right? Yes, sir. Is entitled to change its current trade channels at any time. Thus, we may not assume that the club will never sell clothing online or to third party distributors. And that's the case here too, correct? That's correct, your honor. So the registrant hasn't imposed any limitations on its own registration, whereas the applicant has imposed limitations on its application. That's correct. Thank you. Any other questions? Okay. Thank you very much. Just to address a couple of points, the applicant did indeed exact many restraints on its identifications of goods. And that's because the examiner found no likelihood of confusion and published this application for public opposition, and then clawed it back and worked with the applicant to try and come up with an identification of goods that would pass muster with the office of policy at the office, because she had initially found no likelihood of confusion and I would echo what Judge Stoll said, which is that the board really didn't get in to the intricacies of a store within a store partnership. That's what they were focused on. They said if there's a Venn diagram of overlap somewhere where some consumer could possibly go into board service. When you're looking at channels of trade and a trademark inquiry, you're not really dealing with world life or real life applications of how it actually looks. You're just looking for channels of trade, correct? Yes, but I would argue that you cannot be myopic to the marketplace reality. The government is now advancing the position that if there is an internet store... You couldn't say, an applicant couldn't say, I'm only going to sell my product in stores that have black walls. And they'll be in commercial centers or in shopping centers, but my stores have black walls. The channel of trade there is not the color of the walls. The channel of trade is the shopping mall. Sure, an appellant here with the examiner tried to come up with an identification that would adequately restrict the identification so this application could be republished. And then these thorny issues perhaps could have been addressed in an opposition system, which is the proper forum for dealing with really thorny issues of registrability. The government is essentially advancing a position that if you can find any cosmetic in an online store... The online stuff is not clear from the board's decision. We don't need to go there because we can confine it to brick and mortar high-end retail stores. And their registration has no restrictions. And yours, your mark includes high-end retail stores, at least store within stores in those retail stores. So there's at least some overlap there in trade channels. And we have to decide whether the board's factual finding that these types of goods are similar enough and sold in the same type of trade channels to have substantial evidence on that. So what the board did was say their registration isn't restricted and that's sufficient, moving on. That's not really true, is it? They discussed the types of goods and recognized that the types of goods are similar and that they're sold in the similar kind of location, high-end retail stores. Well, actually they didn't because the evidence of record is that the registrants' goods are sold in low-end beauty supply stores. But they don't have to show that because their registration is unlimited. That's my point. The board basically said, we look at the recitation or the ID and that's it. Nothing further. We don't actually have to look at the goods. We can have a broad notion that if you put something on your body in a cosmetic way, it's part of your beauty regime and it's related. But our case law supports the idea that when you're looking at, you have to just look at the registration, right? We're not supposed to look at where that, those hair products, hair products are actually sold, correct? You can look at marketplace evidence, right? But really when we're talking, I mean, I think that your emphasis should probably be on your own registration, which does have limitations, right? Right. So we tried our best to get this through. And I think if you take the government's argument to its logical conclusion, the register is growing exponentially, 10% per year. At a certain point, there's not going to be any space in the consumer products good if we take the proposition that anything you put on your body or in your body, it's affected or related because it can be part of your regime. And that's an issue here. So the appellant limited its trade channels to its own website, its own stores. And this very narrow exception where they had introduced the perfume in these high-end store within a store and they cited to the board's case law and put in evidence and those images of what those stores are because they had just launched it. So they don't have a huge history of doing this because they hadn't produced perfume in 70 years. It's a very exclusive collection of perfumes. Okay, thank you for your argument. The next case is Angem Inc. versus Cojeras Bioscience.